IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FELDON BARLOW, | § | |
|     PLAINTIFF, | § | |
| | § | |
| | § | CIVIL ACTION NO. _____ |
| VS. | § | |
| | § | |
| | § | |
| | § | |
| WESTINGHOUSE ELECTRIC | § | (JURY DEMANDED) |
|     COMPANY | § | |
|     DEFENDANT, | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, FELDON BARLOW, filing this Original Complaint in which he is complaining of Defendant, WESTINGHOUSE ELECTRIC COMPANY. In support of his causes of action, Plaintiff would show this Honorable Court and Jury the following:

### I.

### JURISDICTION, PARTIES AND VENUE

1.      This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

2.      FELDON BARLOW ("MR. BARLOW") is an individual and a resident of Houston, Fort Bend County, Texas. BARLOW is a member of a group protected by Title VII and was at all relevant times an employee within the meaning of the applicable statute.

3.      Defendant, WESTINGHOUSE ELECTRIC CORPORATION (hereinafter referred to as "WEC," "Defendant," "Westinghouse," or "Westinghouse Electric Corporation") is a

national company, and foreign limited liability company, whose offices are located at 1000 Westinghouse Drive, Cranberry Townsend, PA, 16066. Defendant operates (and has continuously been operating) in the State of Texas. Defendant is a corporation organized and existing under and by virtue of the laws of some other state other than the State of Texas, whose agent for service is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3140.

4. The employment practices alleged to be unlawful herein were committed within Matagorda County, Texas which the Southern District of Texas, services. Venue is appropriate in this Court.

## **VICARIOUS LIABILITY- RESPONDEAT SUPERIOR**

5. Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives including but not limited to Kristina Jones Carson, Mike Battaglia, Jim Wyble, Nick Stipanovich, Jeff Ritz, Jim Garofolo, and Thomas Smentek, did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at Defendant WESTINGHOUSE ELECTRIC CORPORATION, or in the furtherance of Defendant's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant WESTINGHOUSE ELECTRIC CORPORATION or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant WESTINGHOUSE ELECTRIC CORPORATION's officers, owners, servants, employees, or representatives.

## II.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. FELDON BARLOW filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Civil Rights Division, Texas Workforce Commission on or about March 31, 2016. In his charge, FELDON BARLOW asserts that he was discriminated against due to his race. FELDON BARLOW has exhausted his administrative remedies and files this suit within the statutory limitations period. The EEOC issued a Right to Sue Notice on October 17, 2016 authorizing this lawsuit.

7. On or about January 13, 2017, Plaintiff filed a separate charge alleging retaliation caused by Defendant.

## III.

## FACTUAL BACKGROUND

8. Defendant, Westinghouse Electric Company, was established in 1886. At the time of the incident made basis of this lawsuit, Mr. Barlow was one of less than five African American that had ever served in his capacity. To provide some context, although Westinghouse is a large company, there are no more than fifty people in upper management positions throughout the nation; one of which is African American plaintiff, Mr. Barlow.

9. Mr. Barlow is an African American male. He is the first African American male to ever hold the position of Resident Site Manager in Americas West. Defendant's headquarters is located at 1000 Westinghouse Drive, Cranberry Township, Pennsylvania, and currently employs approximately 11,000 employees globally. At the time of the incident made basis of this lawsuit, Mr. Barlow was working at Defendant's customer's South Texas Nuclear Power Station in Wadsworth, Texas.

10. In April of 2015, Defendant began preparations for an upcoming service outage at the South Texas Nuclear Power Station in the Fall of 2015. Defendant contacted a third party vendor of contract labor (hereinafter referred to as "third party vendor" or "System One") to request temporary administrative support at the site during the fall outage. Some time passed and System One had not assigned any administrators to the STP 1RE19 Fall Outage. Mr. Barlow provided two names to System One for consideration for assignment to the STP 1RE19 Fall Outage. Those two names were rejected. With no administrator assigned and a fairly new inexperienced Project Manager, Mr. Barlow asked for permission from Nick Stipanovich ("Mr. Stipanovich"), Greg Johnson ("Mr. Johnson"), and Mark Glover ("Mr. Glover") to submit Mr. Barlow's wife to System One for consideration of employment. Mr. Barlow also offered two additional names. Permission was given by all three. On or about July 20, 2015, Dave Book of System One decided to hire Yvette Earle-Barlow ("Mrs. Barlow"), Plaintiff's wife. Before doing so, Mr. Barlow received a call from Dave Book ("Mr. Book") during which Mr. Book confirmed that Mrs. Barlow was in fact Mr. Barlow's wife.

11. Prior to this occurrence, and even after, it was common business practice for Westinghouse employees to have their wives hired by third party contractors, for both parties to receive per diem, and for couples to travel together using the same.

12. On or about September 17, 2015, a challenge review presentation was performed at STP. During that presentation, a staffing organization chart was shown for the refueling project. Tom Smentek ("Mr. Smentek") was in attendance and received a copy of the presentation. Slide 16 shows that the administrator assigned was Yvette Earle-Barlow. Other persons in attendance were Tim Powell, Louis Peter, Mike Berrens, and Mark Glover. The presentation was accepted with no exceptions. Several WEC personnel had knowledge of Mr. Barlow's wife being the refueling administrator hired by the third party contracting company, System One.

13. On or about August 17, 2015, Mr. Barlow received an email from Mr. Stipanovich giving Mr. Barlow the charge number for the administrator to use. On or about August 10, 2015, Mr. Stipanovich also emailed Mr. Barlow making all lodging arrangements for all individuals staying at the Hampton Inn.

14. Mr. Stipanovich gave Mr. Barlow permission to sign timesheets of any contractors if Mr. Barlow had personal knowledge of the hours worked.

15. In preparation for the job, Westinghouse planned to pay for his employee's hotel. Mrs. Barlow's employer, System One, provided a per diem for its employees. System One provided two per diem options. The first option covered the employee's hotel, rental car, and food. The second option was a full per diem which allowed employees to spend it as they pleased. Mrs. Barlow elected the second option.

16. On November 21, 2015, Mr. Barlow and his wife reported to the site of the outage. Plaintiff and his wife utilized the room previously approved by Mr. Stipanovich which was paid by Defendant. This was previously approved by Jim Wyble and Tom Smentek. The project was completed without incident.

17. On or about February 29, 2016, Mr. Barlow had a meeting with Mike Battaglia, Kristina Jones Carson, and one other individual. During that meeting Defendant, by and through its employees, stated that it believed Mr. Barlow stole from the company by violating the Conflict of Interest policy housed in the company's Code of Ethics when Mr. Barlow caused his wife to be hired by System One. Defendant accused Mr. Barlow of stealing because Mr. Barlow expensed his hotel to Defendant and his wife received a full per diem from System One which Defendant called "double dipping." At the conclusion of the meeting Mr. Barlow was placed on an unpaid suspension.

18. Mr. Barlow requested a formal letter of discipline several times to no avail. On or about March 29, 2016, Mr. Barlow finally received an official letter from Defendant detailing the charges, punishment, and reinstatement. At the conclusion of the suspension and investigation, Mr. Barlow was ordered to reimburse the company $1,601.21.

19. Defendant does not have a policy outlining "double dipping." In fact, as previously stated, it is a common practice that Defendant has notice of as several complaints have been made about it.

20. On or about March 31, 2016, Mr. Barlow filed a charge with the U.S. Equal Employment Opportunity Commission alleging race discrimination for the basis of the disciplinary action taken against him.

21. On or about June 17, 2016, Mrs. Barlow was removed from the project and has not been called for any other projects.

22. On or about August 4th, 2016, Mr. Barlow requested time off in order to support his daughter who participated in the junior Olympics which required him to leave an out-of-state

location early. On his way to the airport to travel home, Mr. Barlow realized that he failed to reserve a rental car. Mr. Barlow did so at the airport but the company only cars rented at a SUV rate of cost. Mr. Barlow returned home on Thursday and returned the rental car on Saturday.

23. The resulting expense report was approved by Mr. Battaglia. Three weeks after approval and payment of the expense report, Mr. Barlow was written up because of an alleged expense report violation. Mr. Barlow was notified of this write up via email only. Defendant alleged that the type of car that Mr. Barlow rented, and the length of time Mr. Barlow kept the car, was unreasonable. Although Mr. Barlow was forced to rent an SUV, it was common company practice for employees to do so. However, employees have not received disciplinary action.

24. In efforts to remove himself from the hostile working environment, Mr. Barlow applied for lateral and upper level positions for which he was qualified. Mr. Barlow was not called to interview for any position. Those positions include, but are not limited to, NPO Manager, Resource manager, Kensington Plant Manager, and Director.

25. Due to the aforementioned action and inaction, Mr. Barlow provided two weeks' notice of his last day as Defendant's employee on or about October 10, 2016.

## IV.

## CAUSES OF ACTION

### RACIAL DISCRIMINATION

**A.    RACIAL DISCRIMINATION AGAINST FELDON BARLOW**

26. PLAINTIFF repeats and re-allege by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

27. Race discrimination involved treating someone unfavorably because he is of a certain race. The law forbids discrimination when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other terms or condition of employment. Such discrimination includes differential treatment or application of company policy based on someone's race. It is illegal for an employer to discriminate against an employee in the payment of wages or employee benefits on the basis of race. An employer may not take into account a person's race when making decisions about discipline or discharge. For example, if two employees commit a similar offense, an employer may not discipline them differently because of their race.

28. A plaintiff makes out a prima facie case of race discrimination by demonstrating he belongs to a protected class, was subjected to differential treatment and said treatment was based on plaintiff's race, and the treatment affected a tangible aspect of the plaintiff's employment. Plaintiff Barlow meets all of these requirements.

29. Plaintiff is a member of the protected class as an African American male.

30. WESTINGHOUSE ELECTRIC COMPANY, LLC, through its agents, supervisors, or employees disciplined Mr. Barlow for actions that were not forbidden by any then-existing policy. In addition, Defendant failed to discipline other employees for similar actions. The only difference between those employees and Mr. Barlow is his race.

31. As a result of the incident and the surrounding investigation, Mr. Barlow was forced to reimburse Defendant $1,601.21. The disciplinary action was also placed in his personnel file which Defendant could have considered when Mr. Barlow applied for other internal positions.

32. The above-described discriminatory actions created an intimidating, oppressive, hostile and overtly offensive work environment, which interfered with Mr. Barlow's emotional and physical well-being.

33. As a direct and proximate result of WESTINGHOUSE ELECTRIC COMPANY'S willful, knowing and intentional discrimination against FELDON BARLOW through its agents, supervisors, or employees, FELDON BARLOW has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; Mr. Barlow has been ridiculed and subjected to scrutiny, and he has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. FELDON BARLOW is thereby entitled to general and compensatory damages in amounts to be proven at trial.

34. As a further direct and proximate result of WESTINGHOUSE ELECTRIC COMPANY'S violation of Title VII, as heretofore described, FELDON BARLOW has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the then-existing employment relationship with WESTINGHOUSE ELECTRIC COMPANY, and have thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to FELDON BARLOW. FELDON BARLOW requests that attorney's fees be awarded pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e-5(g) & (k).

35. FELDON BARLOW repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth. FELDON BARLOW was subjected to disparate treatment because his Caucasian and non-black co-workers were not disciplined for behavior for which FELDON BARLOW was disciplined.

Discriminatory can be inferred from the difference in treatment and the same amount of African American males in upper management.

36. Other employees have caused their wives to be hired by third party contractors and no disciplinary action has been taken. Those persons include, but are not limited to, Bruce and Carlotta Danowsky, Kevin and Inez Johnson, Veronica Odendall and her husband, and Larry Dumontelle and Angie Hall.

37. Other employees have "abused" expenses covered by the company and no disciplinary action has been taken. Those persons include, but are not limited to, John Premich, Chris Childress.

38. Defendant has knowledge of the activity of their employees by and through its Human Resources department, namely Ashley Metz-Leax.

## V.

## JURY DEMAND

43. FELDON BARLOW requests that this action be heard before a jury.

## VI.

## DAMAGES

44. WESTINGHOUSE ELECTRIC COMPANY conduct constitutes violations of statutory law. Such unlawful conduct seriously affects FELDON BARLOW in their occupation, trade and business. Because of WESTINGHOUSE ELECTRIC COMPANY'S unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. FELDON BARLOW has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of WESTINGHOUSE ELECTRIC

COMPANY. Accordingly, FELDON BARLOW seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

45. Because of WESTINGHOUSE ELECTRIC COMPANY's unlawful conduct, it has been necessary for FELDON BARLOW to retain the undersigned attorney to represent then in these causes of action. FELDON BARLOW has agreed to pay their attorney reasonable attorney's fees for the preparation and trial of these causes.

46. Additionally, FELDON BARLOW has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve their ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

47. Further, FELDON BARLOW seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to WESTINGHOUSE ELECTRIC COMPANY. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that WESTINGHOUSE ELECTRIC COMPANY did not promptly tender damages assessed against them and to avoid unjustly enriching WESTINGHOUSE ELECTRIC COMPANY.

## VII.

## PRAYER

WHEREFORE, premises considered, FELDON BARLOW prays that WESTINGHOUSE ELECTRIC COMPANY be cited to appear and answer herein, and that on a final trial, Plaintiff has judgment against WESTINGHOUSE ELECTRIC COMPANY for:

a. All damages to which FELDON BARLOW may be entitled pursuant to this Original Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or

front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by FELDON BARLOW in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which FELDON BARLOW may be entitled, whether by this Original Complaint or by any amendment hereto.

Respectfully submitted,
THE COX PRADIA LAW FIRM, P.L.L.C.

/s/ *Troy J. Pradia*
Troy J. Pradia
Attorney-in-Charge
State Bar No. 24011945
Federal Bar No. 30260
tjp@coxpradialaw.com
Shasta P.C. Blanton
State Bar No. 24089065
Federal Bar No. 2590207
Shasta@coxpradialaw.com

1415 North Loop West, Suite 200
Houston, Texas 77008
Telephone: (713) 739.0402
Facsimile: (713) 752.2812
**ATTORNEYS FOR PLAINTIFF**